**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Steven J. Roy

    v.                          Civil No. 24-cv-313-JL-AJ

N.H. Department of Corrections
Commissioner Helen Hanks, et al.[1]

**REPORT AND RECOMMENDATION**

    Before the court is Steven J. Roy's Complaint (Doc. No. 1), Amended Complaint (Doc. No. 5), an Addendum to his Amended Complaint (Doc. No. 6), the matters alleged in Roy's motion for a preliminary injunction (Doc. No. 7).[2]  Roy's claims arise from his allegations regarding his teeth and the dental services at the Northern New Hampshire Correctional Facility ("NCF").  Roy claims that the defendant NCF dentist Dr. Edwards, whose first name is unknown, and the defendant prison officials have been deliberately indifferent to the deterioration of his teeth in violation of his rights under the Eighth Amendment and/or in a manner amounting to torts under state common law.  The matter is

---

    [1] Plaintiff names the following defendants: New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks, DOC Director of Medical and Forensic Services Paula Mattis, DOC Deputy Director of Medical and Forensic Services Mary Reed, DOC Dental Administrator/Assistant Alexis Isabelle, and DOC Dentist Dr. Edwards, whose first name is unknown.

    [2] The motion for a preliminary injunction (Doc. No. 7) remains pending.  A briefing schedule on that motion is established in a separate order.

here for review under 28 U.S.C. § 1915A and LR 4.3(d)(1).

## Preliminary Review Standard

In conducting a preliminary review of a prisoner's claims seeking relief from government officials, this court considers whether those claims should be dismissed because there is a lack of subject matter jurisdiction, a defendant is immune from the relief sought, the plaintiff failed to state a claim upon which relief can be granted, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b); LR 4.3(d)(1).  To determine whether to dismiss claims for failure to state a claim upon which relief can be granted, this court takes as true the factual content in the complaint and the reasonable inferences drawn from those facts, and, after stripping away legal conclusions, considers whether the claim is plausible on its face.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  When plaintiff lacks counsel, the court construes his pleadings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background

I.   Roy's Teeth and Dental Health Needs

Roy has dental problems.  A full set of adult teeth, including four wisdom teeth, is thirty-two teeth.  As of

February 21, 2025, Roy had only thirteen teeth left, some of which are just roots lacking crowns. Ten of his remaining teeth are in his top jaw (Teeth #2, #5-#7, #8 (no crown since Jan. 16, 2024), #9, #10 (no crown as of Feb. 21, 2025), #11, #13, #14). His lower jaw has the roots of only three lower teeth left (Teeth #20-#22), all without crowns. See Feb. 21, 2025 Aff. of Steven J. Roy (Doc. No. 7-3).

Roy states that eight of his top teeth and the three roots of teeth in his bottom jaw are decaying. Mot. for Prelim. Inj. ¶ 2 (Doc. No. 7). Roy asserts that the decay has an adverse effect on his cardiovascular system. Feb. 21, 2025 Aff. of Steven J. Roy (Doc. No. 7-3). He asserts that since the prison will not perform root canals, extraction is the only way the prison proposes to handle the decay in his tooth roots. Id. Roy prefers to keep what remains of all of his teeth until he receives his preferred form of treatment, dental implants. Id.

Eating solid food is painful for Roy because of the status of his lower teeth and gums. Id. Solid food presses against his lower gums as he chews. Id. Roy refuses to eat pureed food, and he does not want dentures. He refused to have his last three bottom teeth extracted in September 2024, to avoid losing jawbone mass he believes he needs if he were to get implants. See Feb. 5, 2025 Aff. of Steven J. Roy (Doc. No. 7-2)

3

("February 5 Roy Aff."); Feb. 21, 2025 Aff. of Steven J. Roy (Doc. No. 7-3).

Roy asserts that defendant Dental Administrator Alexis Isabelle, in early 2022, told Roy that the treatment of cavities in his upper teeth was conditioned on his agreement to allow his lower teeth to be extracted. See Am. Compl. ¶¶ 8, 12, 14, 16, 30 (Doc. No. 5, at 4-5). Roy refused that treatment plan.

After examining Roy and speaking out of Roy's presence with Administrator Isabelle, Dentist Dr. Edwards told Roy on May 11, 2023 that the plan was to extract Roy's lower teeth, talk about getting a denture, and then fix Roy's upper teeth. See Aug. 2, 2024 Aff. of Steven J. Roy ¶ 14 (Doc. No. 1-1 at 2). Roy rejected that plan on that day and afterwards, telling Dr. Edwards and prison officials that since his lower teeth were not painful, infected, or loose, repairing his upper teeth was Roy's highest priority. See id. From early 2022 until October 2024, Roy asserts, he received no upper teeth fillings, only a "no-drill 'patch' to Tooth #10." Am. Compl. ¶ 31, at 12.

From May 11, 2022 until December 4, 2024, Roy did not obtain any fillings despite sending Inmate Request Slips ("IRSs") asking for fillings for his upper teeth to NCF Dental and to Alexis Isabelle. See Mot. for Prelim. Inj. ¶ 6 (Doc. No. 7, at 2); Doc. No. 1-1, at 6-23. In early June 2024, Roy received an appointment to patch Tooth #10, followed by two

4

separate appointments in July 2024 for a cleaning and for x-rays.  Am. Compl. ¶¶ 19, 21.  Roy also received an appointment with a hygienist in August 2024, two appointments with a dentist for extractions in September 2024, and a filling on or about December 4, 2024.

On August 27, 2024, an NCF dental hygienist informed Roy that the plan for Roy at that point was to extract three of his six remaining lower teeth on September 5, 2024 (Teeth #26-#28), repair cavities in seven of his upper teeth, then extract the last three teeth in his lower jaw (Teeth #20-#22) on a later date and give Roy a denture.  See February 5 Roy Aff.  Roy went forward with the extraction of Teeth #26-#28, on September 5, 2024, but on September 26, 2024, he refused to allow his remaining three bottom teeth (Teeth #20-#22) to be extracted.  Roy told dentist Dr. Caric that he wanted dental implants.  Id.  Dr. Caric then "advised" Roy to wait on removing Teeth #20-#22, since Roy said he expected to obtain court-ordered implants.  See id.; Mot. for Prelim. Inj. ¶ 1 (Doc. No. 7); Am. Compl. ¶¶ 25-26 (Doc. No. 5).

Roy asserts as a general matter that the NCF hygienists or dentists who perform dental exams and cleanings do not notify him when they identify cavities.  Am. Compl. ¶ 28.  Roy asserts that he finds out about his cavities when they become bad enough to see, cause pain, or break teeth.  Id.  Roy claims that New

5

Hampshire Department of Corrections ("DOC") Medical and Forensics Director Paula Mattis has the duty to train the dental staff regarding what and when to tell prisoners about their cavities, and that she failed to train or oversee the dental staff to communicate with him about his cavities.  Id.

Roy also faults defendants for their failure to respond on time, or at all, to his IRSs and grievances.  Id. ¶ 13.  He asserts that DOC Medical and Forensics Deputy Director Mary Reed in May 2024 promised that Roy was scheduled for a complete oral exam and for an appointment to address a plan of care for his upper teeth.  Id. ¶ 18.  Roy asserts he did not receive those appointments.

Roy asserts that for more than three years before he filed this lawsuit, dental services at NCF were severely limited due to a lack of staff.  Am. Compl. ¶ 11.  In early 2022, for example, dentist Dr. Bergstadt told Roy that she could not propose a timeline for the extraction of his lower teeth and the lower denture she said he needed.  Id. ¶ 12.  Roy states that Director Mattis knew about the lack of staff at NCF as early as 2016, telling prisoners at that time that the prison was recruiting new dental care providers.  He says that the staff the DOC hired neither remained employed for longer than a few months, nor came to NCF more than two days per week for years after 2016.  Id. ¶¶ 5, 12.  Beginning sometime in late 2024 or

6

early 2025, the DOC increased the dental staff at NCF from two days per week to five days per week. Mot. for Prelim. Inj. ¶ 1 (Doc. No. 7). Roy claims that the increase in staffing did not come soon enough to fix his dental problems.

II.   Pertinent Litigation History

Roy has a history of filing federal cases challenging DOC dental services, including services at NCF. Among the cases he has filed in addition to this case are Roy v. N.H. Dep't of Corr. Comm'r, No. 09-cv-075-SM (D.N.H.) ("Roy I"), and Roy v. N.H. Dep't of Corr. Comm'r, No. 18-cv-817-JL (D.N.H.) ("Roy II"). Roy I ended with a negotiated settlement, the terms of which provide, among other things, that Roy will "receive two dental cleanings each year with an examination by a dentist," as well as "full radiographic x-rays every two years." Roy I Settlement Agreement ¶¶ 2(a)-(b), docketed in Roy II, ECF No. 34-2, at 4; see also Am. Compl. ¶ 9 (Doc. No. 5, at 4).

In Roy II, Roy claimed that deficiencies in the dental care at NCF breached the terms of the Roy I agreement and violated his federal rights. The court in Roy II dismissed a number of Roy's claims following its preliminary review of Roy's complaint and then granted defendants' motion for summary judgment on Roy's remaining claims. See Mar. 18, 2022 Order, Roy II (ECF No. 88). Roy appealed, unsuccessfully. See Roy v. Hanks, No.

7

22-1302 (1st Cir. Mar. 6, 2023) (affirming summary judgment), docketed in Roy II, ECF No. 104.

### **Claims**

In the Amended Complaint here, Roy asserts the following claims:

1.   Defendant Dentist Dr. Edwards violated Roy's Eighth Amendment right to receive necessary dental care for his serious dental health needs and provided substandard dental services that harmed Roy, with respect to the decay and deterioration of his upper teeth, in that:

   a.   Dentist Dr. Edwards devised or implemented a treatment plan beginning on May 11, 2023, with deliberate indifference to a substantial risk of serious harm to Roy, making the extraction of Roy's bottom teeth a precondition for treating the cavities in Roy's upper teeth, giving rise to the dentist's liability under 42 U.S.C. § 1983; and

   b.   Dr. Edwards's acts or omissions summarized in Claim 1(a) amounted to dental malpractice, actionable under New Hampshire law.

2.   Defendant Dental Administrator Alexis Isabelle violated Roy's Eighth Amendment right to receive necessary dental care for his serious dental health needs and failed to exercise reasonable care in a manner causing harm to Roy, with respect to the decay and deterioration of Roy's upper teeth, in that:

   a.   Dental Administrator Isabelle, with deliberate indifference to a substantial risk of serious harm to Roy, devised or implemented a treatment plan for Roy, beginning in early 2022, making the extraction of Roy's bottom teeth a precondition for treating the cavities in Roy's upper teeth, giving rise to her liability under 42 U.S.C. § 1983;

   b.   Dental Administrator Isabelle, with deliberate indifference to a substantial risk of serious harm to

    Roy, failed to schedule prompt and appropriate appointments for Roy's upper teeth, beginning on May 11, 2022, giving rise to her liability under 42 U.S.C. § 1983; and

    c.    Dental Administrator Isabelle's acts or omissions summarized in Claims 2(a)-(b) amounted to negligence, actionable under state law.

3.    Defendants Dr. Edwards and Dental Administrator Isabelle conspired to deprive Roy of his civil rights, in that they agreed to place a precondition on Roy's receipt of necessary dental care for his upper teeth, rendering them liable for a civil rights conspiracy under 42 U.S.C. § 1983 or § 1985.

4.    The Supervisory Defendants (DOC Commissioner Helen Hanks, Director of Medical and Forensic Services Paula Mattis, and Deputy Director of Medical and Forensic Services Mary Reed) violated Roy's Eighth Amendment right to receive necessary dental care for his serious dental health needs and failed to exercise reasonable care in a manner causing harm to Roy, with respect to the decay and deterioration of Roy's upper teeth, in that:

    a.    Beginning more than three years before Roy filed this lawsuit, with deliberate indifference to a substantial risk of serious harm to Roy, Commissioner Hanks and Director Mattis did not hire or retain sufficient permanent on-site dental staff at NCF, giving rise to their liability under 42 U.S.C. § 1983;

    b.    Director Mattis, with deliberate indifference to a substantial risk of serious harm to Roy, failed to train the NCF dental providers to ensure that they would communicate with Roy about cavities found during his exams and cleanings, which caused Roy's cavities to worsen to the point of pain or destruction of teeth before Roy knew to ask for treatment, giving rise to her liability under 42 U.S.C. § 1983;

    c.    The Supervisory Defendants, with deliberate indifference to a substantial risk of serious harm to Roy, did not respond promptly or effectively to Roy's grievances regarding the failure to treat his serious

9

>    dental health needs, giving rise to their liability under 42 U.S.C. § 1983; and
>
>    d.   The Supervisory Defendants' acts or omissions summarized in Claims 4(a)-(c) amounted to negligence, actionable under state law.

Roy seeks damages and injunctive relief, including an order directing defendants to provide him with dental implants. See Am. Compl. at 13; Mot. for Prelim. Inj. (Doc. No. 7) ¶ 12.

## Discussion

### I. Eleventh Amendment

Roy names each defendant in his or her official capacity. And he seeks damages as well as injunctive relief.

The Eleventh Amendment precludes a claim for damages against state agents in their official capacities. See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014). The district judge should dismiss all of Roy's claims for damages asserted against each defendant in his or her official capacity as a state agent.

### II. Dental Care Claims

#### A. Eighth Amendment Standard

An Eighth Amendment claim challenging the adequacy of prison dental services has both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). "[T]he deprivation alleged must be, objectively, 'sufficiently

serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted). The objective component may be established by evidence of a health need "diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016).

To satisfy the subjective prong of an Eighth Amendment claim, a plaintiff must present evidence of defendants' deliberate indifference to the plaintiff's serious health need. A plaintiff may state a claim of deliberate indifference upon allegations that the defendant(s) knew of circumstances giving rise to an inference that a substantial risk of serious harm existed; that the defendant(s) drew the inference that such a risk existed; and that the defendant(s), failed to take reasonable steps to ameliorate the risk. See Farmer, 511 U.S. at 828-29; Leite v. Bergeron, 911 F.3d 47, 52–53 (1st Cir. 2018) ("'plaintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm'" (citations omitted)).

A showing of deliberate indifference may also be made by "demonstrating that the defendant provided medical care that was 'so inadequate as to shock the conscience,'" or was "'so clearly

11

inadequate as to amount to a refusal to provide essential care.'" Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (citations omitted). Deliberate indifference is not established by evidence of negligence or a disagreement regarding treatment plans. See Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014); Watson v. Canton, 984 F.2d 537, 540 (1st Cir. 1993).[3]

B.   Upper Teeth Cavities (Claims 1(a), 2(a)-(b))

Roy asserts sufficient facts to state Eighth Amendment deliberate indifference claims under 42 U.S.C. § 1983 against Dental Administrator Isabelle and NCF Dentist Dr. Edwards relating to the failure to treat cavities in his upper teeth, based on the matters summarized above in Claims 1(a) and 2(a)-(b). In the Service Order issued this date, the court directs service of the Amended Complaint upon those defendants.

C.   Civil Rights Conspiracy (Claim 3)

A civil rights conspiracy under section 1983 is "commonly defined [as] 'a combination of two or more

---

[3] While medical evidence is not invariably required to show deliberate indifference, in Roy II, where Roy challenged the adequacy of care on issues that were not obvious to a lay person, and each defendant dentist opined that the care provided complied with the standard of care, Roy's failure to present medical evidence of deliberate indifference was fatal to his claims. See Roy v. Dransite, No. 18-CV-817-JL, 2022 WL 1302056, at *5, 2022 U.S. Dist. LEXIS 80155, at *14 (D.N.H. Mar. 18, 2022), aff'd sub nom. Roy v. Hanks, No. 22-1302, 2023 WL 3166353, 2023 U.S. App. LEXIS 10738 (1st Cir. Mar. 6, 2023).

> persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'"  To establish a civil rights conspiracy, a plaintiff must show "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."

Sanchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (citations omitted).

> To establish the first element of a section 1983 conspiracy -- an agreement among the members of the conspiracy -- the plaintiff must prove either the existence of a "single plan[,] the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences," or "[a]t the least" that "the parties decide[d] to act interdependently, each actor deciding to act only because he was aware that the others would act similarly."

Id. at 12 (citations omitted).  Although "pro se complaints are to be read generously, allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements."  Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (citation omitted).

Stripped of legal conclusions and speculation, the Amended Complaint states that Dr. Edwards in March 2023, after examining Roy and speaking with Dental Administrator Isabelle outside of Roy's hearing, presented a treatment plan to Roy that sounded to Roy like the same plan he had already heard from Dental Administrator Isabelle: prioritizing the extraction of Roy's

13

lower teeth, fitting Roy for a lower denture, and then repairing Roy's upper teeth. The Amended Complaint fails to state facts sufficient to show that there was any agreement to violate Roy's federal rights with respect to those matters. Furthermore, Roy has not pleaded any facts suggesting that he suffered discrimination on the basis of his race or membership in any protected class, which is a prerequisite to stating an actionable claims under § 1985(3). See Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 318 (D. Mass. 2011). Accordingly, the district judge should dismiss Claim 3, asserting a civil rights conspiracy under § 1983 or § 1985.

III. Claims against Supervisors

    A.    Long-Term Understaffing (Claim 4(a))

Roy alleges that the long-term failure to hire and retain permanent full-time dental care providers at NCF caused him not to receive adequate treatment for his dental health needs. He asserts that Commissioner Hanks and Director Mattis are primarily responsible for hiring and retention of dental providers at the DOC, and that the lack of sufficient full-time permanent staff for more than three years caused dental care to be rationed, leaving Roy's dental needs unaddressed.

Roy alleges that the Supervisory Defendants, particularly Director Mattis, knew that the lack of dentists at the DOC (and

NCF) was a problem. Roy has not pleaded any nonconclusory facts, however, to show that Director Mattis and Commissioner Hanks, knowing that cases were triaged and/or that resources were limited, also knew that Roy's serious dental needs would be unmet as a result of their hiring and retention policies. Accordingly, the district judge should dismiss Claim 4(a).

### B. Failure to Supervise or Train (Claim 4(b))

Roy alleges that Director Mattis's failure to train or supervise the dental care providers at NCF violated Roy's Eighth Amendment rights. In particular, he alleges that Director Mattis failed to train the dental providers at NCF to tell Roy whether or not he had cavities when they examined or cleaned his teeth. Roy asserts that because of that lack of information, he often did not know about cavities before they became visible, broke his teeth, or caused pain.

A government official sued under Section 1983 is "only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. A supervisor may not be held liable for the constitutional violations of subordinates, unless there is an "affirmative link" between the behavior of the subordinate and the action or inaction of his supervisor, such that the supervisor's conduct led inexorably to the constitutional violation. Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir.

2011).

> [A] supervisory official may, in limited circumstances, be liable under § 1983 for failure to train or to adopt policies if a plaintiff shows (1) the supervisor "failed to train the officers involved," (2) "that failure to train . . . caused the violation of the plaintiff's rights," and (3) "the failure to train . . . constituted deliberate indifference."

McNeal v. LeBlanc, 90 F.4th 425, 432 (5th Cir.) (citation omitted), cert denied, 145 S. Ct. 266 (2024).

Here, Roy asserts that his lack of knowledge of his cavities resulted in harm to his teeth. Roy has failed to plead facts, however, to show that any dental care provider who identified a cavity in Roy's teeth failed to alert him, knowing that the failure to impart that information subjected Roy to a substantial risk of serious harm. Moreover, Roy has not pleaded facts showing that any Supervisory Defendant responsible for training the dental staff as to what and when to tell prisoners about their dental health omitted such training, knowing that Roy's serious dental needs would go unaddressed as a result. Accordingly, the district judge should dismiss Claim 4(b).

### C.  Grievances (Claim 4(c))

Roy claims that the Supervisory Defendants' failure to answer his grievances promptly interfered with his ability to access dental care for his serious dental needs, in violation of the Eighth Amendment. He names the Supervisory Defendants as

16

defendants to those claims.

Roy has pleaded facts to show that some of his grievances were not promptly answered. But Roy has not pleaded nonconclusory, nonspeculative facts showing that the delayed responses were acts of deliberate indifference to a known, substantial risk of serious harm to Roy, or that the late responses, noting that appointments had been scheduled, did not amount to reasonable steps to ameliorate the risk. See, e.g., Deputy Dir. Reed's May 21, 2024 Response to Roy's Apr. 15, 2024 Grievance. Accordingly, the district judge should dismiss Roy's Eighth Amendment claims premised on the Supervisory Defendants' handling of his grievances (Claim 4(c)).

III. Supplemental Jurisdiction

    A.   Claims 1(b) and 2(c)

This court has supplemental jurisdiction over state law claims that form part of the same case or controversy as the claims in this case arising under 42 U.S.C. § 1983. 28 U.S.C. § 1367(a). Roy's claims of negligence and dental malpractice asserted against Dental Administrator Isabelle and Dr. Edwards are among those claims that the Order issued on this date requires those defendants to answer (Claims 1(b) and 2(c)).

B. <u>Claim 4(d)</u>

This court may decline to exercise supplemental jurisdiction over state law claims where the court has dismissed the pertinent federal claims in the case, or where the state law claims would substantially predominate over the federal claims that remain in the case. <u>See</u> 28 U.S.C. § 1367(c)(2)-(3). All of the federal claims asserted against the Supervisory Defendants should be dismissed for Roy's failure to plead facts sufficient to show deliberate indifference. The district judge should thus decline to exercise supplemental jurisdiction and dismiss without prejudice the related state law negligence claims (Claim 4(d)) against those same defendants arising from the same facts. In addition, the claims, defenses, and evidence pertinent to the state law negligence claims relating to hiring and retention, professional training, and the grievance process is unlikely to overlap substantially with what may be needed to establish or defend against the claims asserted against Dr. Edwards and Administrator Isabelle. The state law claims that remain against the Supervisory Defendants are thus likely to predominate over the federal claims remaining in this case. Accordingly, the district judge should dismiss Claim 4(d) without prejudice to Roy's ability to refile his negligence claims against the Supervisory Defendants in state court.

## Conclusion

For the foregoing reasons, the magistrate judge recommends as follows:

1. The district judge should dismiss Claims 3 and 4(a)-(c), for failure to state a claim upon which relief can be granted;

2. The district judge should decline to exercise jurisdiction over Claim 4(d) and dismiss Claim 4(d) without prejudice to preserve Roy's ability to file a new action in state court asserting that state law claim;

3. The district judge should drop Commissioner Helen Hanks; Director Paula Mattis; and Deputy Director Mary Reed as defendants, as all claims against them should be dismissed from this case; and

4. The district judge should dismiss all claims seeking damages against defendants in their official capacities as state agents.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 18, 2025

cc: Steven J. Roy, pro se