**UNITED STATS DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Steven J. Roy

v. Civil No. 24-cv-313-JL-AJ

New Hampshire Department of Corrections Commissioner, et al.

**REPORT AND RECOMMENDATION**

Before the court is plaintiff Steven J. Roy's two-part motion for a preliminary injunction (Doc. Nos. 7, 32). See Feb. 25, 2026 Order. At issue here are Mr. Roy's claims relating to the dental care provided to him at the New Hampshire Department of Corrections ("DOC") Northern New Hampshire Correctional Facility ("NCF"). The defendants remaining in the case are Mr. Roy's (former) NCF treating dentist Dr. Kenneth Edwards, in his official capacity; and DOC Dental Administrator-Dental Assistant Alexis Isabelle, in her individual and official capacities. Ms. Isabelle filed an objection to Mr. Roy's motions for preliminary injunction.

The court held an evidentiary hearing in this matter on September 8, 2026. The record on those motions includes the parties' filings (Doc. Nos. 7, 16, 26, 32, 34, 35), Mr. Roy's affidavits, Mr. Roy's pertinent NCF dental records (Doc. No. 59), and testimony given at the September 8, 2026 hearing.

**Preliminary Injunction Standard**

A plaintiff seeking a preliminary injunction must show a likelihood of success on the merits, the prospect of irreparable harm in the absence of injunctive relief, a favorable incline of the balance of equities, and the public interest disposed toward granting such relief. See Glossip v. Gross, 576 U.S. 863, 876 (2015). The burden of proof is on the movant. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). The likelihood of success and irreparable harm

are factors that weigh most heavily in the analysis. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

## Background

### I. Procedural History

Mr. Roy filed this lawsuit in 2024, under 42 U.S.C. § 1983, claiming that the dental services at NCF violated his Eighth Amendment rights. Mr. Roy claims that Defendants violated his Eighth Amendment right to adequate dental care, in that they devised or implemented a treatment plan making the extraction of Mr. Roy's bottom teeth a precondition for treating cavities and decay in Mr. Roy's upper teeth, with deliberate indifference to a substantial risk of serious harm to Mr. Roy. In his (first) motion seeking a preliminary injunction ("First PI Motion") Mr. Roy seeks a court-ordered referral for dental implants. See Doc. No. 7; see also Pl.'s Reply to First PI Motion (Doc. No. 26) ¶ 9. In his (second) motion seeking a preliminary injunction ("Second PI Motion"), Mr. Roy seeks a court-ordered referral for immediate treatment of decay and cavities in his upper teeth. See Doc. No. 32, at 3; see also Pl.'s Reply to Second PI Motion (Doc. No. 35) ¶ 10.

### II. Mr. Roy's Teeth

A full set of adult teeth is thirty-two teeth (including four wisdom teeth). In dental charts, each tooth has a number. Teeth #1-#16 are in the upper jaw, and Teeth #17-#32 are in the lower jaw. See, e.g., Doc. No. 16-1, at 1.

As of August/September 2026, Mr. Roy had only eleven teeth in his upper jaw, including eight above the gumline with crowns (Teeth #2, #5, #6, #9, #11, #13, #14, and #16), Doc. No. 52, at 1; Doc. No. 54 ¶ 3, and the roots of three other teeth (Teeth #7, #8, #10) below the

gumline, Doc. No. 54; Def. Isabelle's Answer (Doc. No. 25) ("Isabelle Ans.") ¶ 15 (Doc. No. 25); Feb. 21, 2025 Aff. of Steven J. Roy (Doc. No. 7-3) ("Roy Aff. III") ¶ 3. Mr. Roy's lower jaw presently lacks any teeth above the gumline, though he retains the roots of three bottom teeth below his gums (Teeth #20-#22). Mr. Roy has, to date, refused to undergo extractions of the retained roots against the recommendations of NCF dental providers. See Aug. 2, 2024 Aff. of Steven J. Roy (Doc. No. 7-1) ("Roy Aff. I") ¶¶ 14-15.

The competent evidence in the record, consisting of Mr. Roy's dental records and NCF Dr. Ron Caric's testimony, indicates that all ten of Mr. Roy's teeth identified in Mr. Roy's August 4, 2026 dental records as targeted for extraction (Teeth #6-#11 & #16 in his upper jaw, and Teeth #20-#22 in his lower jaw) are severely decayed and unrestorable. Dr. Caric testified that the retained roots are "rotten" or "rotting" in place from bacterial infection. Testimony of Dr. Caric, Sept. 8, 2026 ("Caric Test."). Mr. Roy did not present any medical evidence to challenge Dr. Caric's opinion in that regard. Mr. Roy's remaining top teeth not slated for extraction (Teeth #2, #5, #13-#14) also show signs of decay and cavities. First PI Motion ¶ 2 (Doc. No. 7); Caric Test.

Mr. Roy testified that he is not suffering any tooth pain at this time. See Testimony of Steven J. Roy, Sept. 8, 2026; July 13, 2026 SOPA Note (Doc. No. 52), at 16. Mr. Roy asserts, however, that eating solid food is painful or slow because solid food presses against his lower gums when he chews. Apr. 25, 2025 Aff. of Steven J. Roy ("Roy Aff. IV") (Doc. No. 26-1) ¶¶ 1, 3. Mr. Roy refuses to request a pureed diet. Roy Aff. III ¶ 5.

## III. NCF Dentist's Treatment Plan

Mr. Roy claims that Dr. Edwards, after speaking with Ms. Isabelle, told Mr. Roy on May 11, 2023 that the plan was to extract Mr. Roy's lower teeth, talk about getting a denture, and then

fix Mr. Roy's upper teeth. See Roy Aff. I ¶ 14. Ms. Isabelle's Answer admits that the dental staff at that time stated that Mr. Roy's lower teeth needed to be extracted before work would be performed on upper teeth. See Isabelle Ans. ¶ 7. Mr. Roy rejected that plan in 2023, telling Dr. Edwards and others that his priority was to repair his teeth. See Roy Aff. I ¶ 14.

After filing this lawsuit in early 2024, Mr. Roy allowed three of his (then) six remaining, severely decayed lower teeth (Teeth #26-#28) to be extracted. Dr. Caric extracted those teeth on September 5, 2024. Mr. Roy testified that he feared extractions as he had undergone a previous extraction that was prolonged and painful years before.

On September 26, 2024, when Mr. Roy appeared for an appointment, which was scheduled as an extraction of Mr. Roy's remaining three bottom teeth (Teeth #20-#22), Mr. Roy refused to consent to the extraction. Mr. Roy testified that he told Dr. Caric on that date that he had filed a lawsuit (that is, this case), and expected to receive dental implants through this lawsuit. Feb. 5, 2025 Aff. of Steven J. Roy (Doc. No. 7-2) ("Roy Aff. II") ¶ 1. Mr. Roy further recalls Dr. Caric's advice at that time was that Mr. Roy could hold off on the extractions since his teeth would necessarily be extracted when implants were installed. See id.; see also Roy Aff. III ¶ 6.

In late 2024 and early 2025, Mr. Roy complained about his teeth and received fillings on four of his upper teeth from dentist Dr. Frederick Vega. Roy Aff. II ¶¶ 3-4. On December 18, 2024, Dr. Vega placed a temporary filling or patch on Tooth #9. Id. ¶ 4. Mr. Roy received additional fillings or patches on three other teeth in early 2025: on Tooth #11 on February 18, 2025; on Tooth #13 on March 26, 2025; and on Tooth #2 on May 7, 2025.

Approximately four and a half months after receiving a filling or patch on Tooth #2, on September 26, 2025, Mr. Roy appeared for dental "sick call" complaining that Tooth #16 was

painful. He saw Dr. Caric, who recommended extracting Tooth #16, which could not be fixed, as well as Teeth #7-#10 in Mr. Roy's upper jaw. Dr. Caric further recommended extracting Mr. Roy's severely decayed, retained tooth roots (#20-#22) in his bottom jaw, before undertaking repairs of Mr. Roy's remaining four restorable upper teeth. Dr. Caric's notes state he advised Mr. Roy that, "we remove decayed teeth first that cannot be restored." Sept. 26, 2025 SOAP Note (Doc. No. 47, at 5).[1]

On August 4, 2026, Mr. Roy appeared at the NCF dental clinic for his annual dental exam. Aug. 6, 2026 Aff. of Steven J. Roy (Doc. No. 55-1) ("Roy Aff. V") ¶ 1. Dr. Caric told Mr. Roy that the plan for his dental care remained the same: to extract his severely decayed teeth that cannot be restored, including his retained tooth roots, before treating cavities in Mr. Roy's four upper teeth that can be restored. Id. ¶ 2. Dr. Caric said that Mr. Roy could be scheduled for extractions using a local anesthetic and medication to alleviate stress, as soon as Mr. Roy was ready.[2] Id. at ¶¶ 3–4.

[1] Mr. Roy's September 30, 2025 affidavit records the same conversation somewhat differently. Mr. Roy avers that Dr. Caric said that Teeth #7 and #16 had cavities that he could not fix (#7 because "it might not result in a positive outcome or a long-lasting solution and there was too much risk" and #16 because it was a wisdom tooth). Sept. 30, 2025 Aff. of Steven J. Roy (Doc. No. 32-1) ¶ 3. Mr. Roy recalls that when he told Dr. Caric that this case was in its discovery phase, Dr. Caric said: "perhaps after discovery [is] complete" more work could be done. Id. Although Mr. Roy concludes that those remarks implied that the litigation schedule influenced Dr. Caric's treatment plan, Dr. Caric – who is not a party to this case – testified credibly at the September 8, 2026 hearing that his treatment plan for Mr. Roy is not, and has never been, contingent on the schedule in this case.

[2] Mr. Roy avers that Dr. Caric explained to him on August 4, 2026 that "Concord" (ostensibly, DOC administration) requires extractions before filling work, id. and the hygienist in the room with them said that "Concord" cancels filling appointments when extractions are needed. Roy Aff. V ¶ 4. Dr. Caric's treatment notes in Mr. Roy's dental records report that Dr. Caric told Mr. Roy that the plan for Mr. Roy prioritizes extractions of Roy's severely decayed teeth ahead of repairs to Mr. Roy's restorable teeth. Those notes make no reference to any "Concord" policy as a determinant of Mr. Roy's treatment plan, and Dr. Caric testified credibly at the September 8, 2026 hearing that no such policy exists.

Dr. Caric testified at the September 8, 2026 hearing that the treatment plan for Mr. Roy, and its priorities, are driven by concerns about Mr. Roy's oral health, not by any policy of prison officials, the schedule in this lawsuit, or any plan devised by Ms. Isabelle. See Caric Test. Dr. Caric explained that severely decayed teeth are removed first so that bacteria infecting those teeth will not spread infection and damage to healthier teeth even after they are restored. Id. Dr. Caric testified that the plan places repairs at a lower priority so that those repairs will not be compromised by the bacteria remaining in the severely decayed teeth. Id. Fitting and then delivering a denture (a maxillary partial and a mandibular full set) to Mr. Roy are the last steps in the plan, to provide Mr. Roy's mouth the several months' recovery that may be needed before dentures can be fitted once all the extractions and repairs are done. Id.

Dr. Caric testified that the treatment plan for Mr. Roy is consistent with the standard of care for a person with dental issues that include so many severely decayed teeth. Id. The court understands Dr. Caric's testimony to mean that the plan itself, as well as the way it has been implemented are consistent with that standard of care. When asked why another dentist, Dr. Vega, placed fillings on four separate teeth in late 2024 and early 2025 (Tooth #9 in December 2024, Tooth #11 in February 2025, Tooth #13 in March 2025, and Tooth #2 in May 2025), Dr. Caric explained that Dr. Vega frequently installed what Dr. Caric called "temporary patches" on teeth in that time period. Id. Dr. Caric testified that he and Dr. Vega have a professional disagreement on that issue, as Dr. Caric considers temporary fillings to be potentially futile when there are severely decayed teeth harboring bacteria in the person's mouth. Id. This court received no competent evidence showing that Dr. Caric's treatment plan and its implementation in Mr. Roy's case has been substandard.

## IV. Prior Litigation

Mr. Roy filed two federal cases relating to DOC dental services before he filed this case. See Roy v. N.H. Dep't of Corr. Comm'r, No. 09-cv-075-SM (D.N.H.) ("Roy I"); Roy v. N.H. Dep't of Corr. Comm'r, No. 18-cv-817-JL (D.N.H.) ("Roy II"). Roy I ended with a negotiated settlement. See Roy I Settlement, docketed in Roy II (ECF No. 34-2, at 4).

The Roy II court dismissed some of Mr. Roy's claims and granted summary judgment to the defendants on the remaining claims. See Mar. 18, 2022 Order, Roy II (ECF No. 88). Mr. Roy appealed but did not prevail, as he failed to present medical evidence that he had received dental care that violated his federal rights. See Roy v. Hanks, No. 22-1302 (1st Cir. Mar. 6, 2023) (Doc. No. 24-1).[3]

---

[3] In affirming the judgment in Roy II, the First Circuit stated as follows:

> [T]he district court correctly granted summary judgment on Roy's remaining Eighth Amendment claims to the various dentists who treated him. . . . Those claims concern specific examples of allegedly deficient dental care. In the absence of medical evidence in Roy's favor, a factfinder could not reasonably conclude that the treatment he received on those occasions -- which the dentists opine complied with the standard of care -- was "so inadequate as to shock the conscience" and, thus, show the dentists' deliberate indifference. . . . Even if [the court] were to examine Roy's dental history more holistically, the undisputed facts make clear that he received extensive and consistent care throughout the relevant period. Contrary to Roy's argument, then, his claim effectively challenges the dentists' medical judgments concerning the urgency of his many dental issues, the prioritization of those issues, and the futility of treating certain teeth. Again, without medical evidence in his favor, Roy has not raised a triable claim that these judgments were so inappropriate as to show the dentists' deliberate indifference.

Roy v. Hanks, No. 22-1302 (1st Cir. Mar. 6, 2023), slip op. at 2 (citing Redmond v. Kosinski, 999 F.3d 1116, 1120 (8th Cir. 2021) (explaining that medical evidence is often required to demonstrate that treatment deviated so substantially from the standard of care that it signifies the provider's deliberate indifference); Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006))).

## Discussion

### I. Likelihood of Success on the Merits

#### A. Eighth Amendment Standard

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including medical services and dental health care. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005) ("'[D]ental care is one of the most important medical needs of inmates'" (citation omitted)). An Eighth Amendment claim challenging the adequacy of prison dental care has objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Board, 394 F.3d at 480.

To satisfy the objective prong of an Eighth Amendment claim, the plaintiff must demonstrate that the deprivation of dental care alleged "must be, objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (citations omitted). That showing may be made by evidence of a health need "diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016); see, e.g., Board, 394 F.3d at 480 ("[D]ental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need[.]").

To prevail on an Eighth Amendment medical or dental care claim, the plaintiff must also satisfy the subjective prong of such a claim, by showing that defendants have been deliberately indifferent to that serious medical need. See Farmer, 511 U.S. at 834. Deliberate indifference may be shown upon evidence that defendants knew of circumstances giving rise to an inference that a substantial risk of serious harm existed; that defendants drew the inference that such a risk existed; and that defendants, by act or omission, did not take reasonable steps to ameliorate the

risk. See id. at 837-38; Leite v. Bergeron, 911 F.3d 47, 52–53 (1st Cir. 2018) ("[P]laintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm[.]" (citations omitted)). Deliberate indifference is not established by evidence of negligence or a disagreement regarding proper treatment. See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) ("'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" (citations omitted)).

**B. Treatment Plan's Priorities**

To establish an Eighth Amendment violation, Mr. Roy must show that the implementation of the plan that has held off restoring his upper teeth cavities and decay, while prioritizing the removal of his severely decayed teeth, manifests deliberate indifference to his serious medical needs. Mr. Roy relies on Moulton v. Carroll Cty. Dep't of Corr., No. 11-cv-391-PB, 2011 WL 7080656, 2011 U.S. Dist. LEXIS 152579 (D.N.H. Dec. 14, 2011), R&R approved, 2012 WL 2383045, 2012 U.S. Dist. LEXIS 87282 (D.N.H. Jun. 22, 2012) and Harrison v. Barkley, 219 F.3d 132 (2d Cir. 2000).

In Moulton, a pretrial detainee asserting a Fourteenth Amendment claim presented evidence that county officials, aware of his diagnosed need for fillings in sixteen teeth for eight months, had not voluntarily arranged to provide all necessary fillings for the teeth identified by his dentist as needing fillings. 2011 WL 7080656, at *16, 2011 U.S. Dist. LEXIS 152579, at *44-45. The court found the requisite likelihood of irreparable harm to warrant injunctive relief upon the record showing that the worsening of plaintiff's dental condition was "due to the fact that [plaintiff] has not received any corrective or reparative dental care for the eight months that have passed since he began to suffer tooth sensitivity and first requested care.[]" Id.

Moulton is meaningfully distinguishable from this case. Moulton involved the failure of county officials to implement the dentist's recommendations for a person in their custody presenting serious dental health needs. This case involves Mr. Roy's failure to assent to the treatment plan his dentists recommend, which is consistent with the applicable standard of care. Moreover, in Moulton the court found that the deterioration of the plaintiff's teeth over time was due to the lack of the reparative care his dentists identified he needed. Here, the evidence shows that the deterioration of Plaintiff's teeth is attributable to the continuing presence of bacteria in Mr. Roy's mouth coming from his severely decayed teeth, which Mr. Roy wants to retain and of which he has therefore refused extraction, contrary to the priorities of his dentist-recommended treatment plan.

In Harrison, the prisoner sought treatment for a cavity. Prison officials, including a prison dentist, conditioned treatment on the prisoner's consent to extraction of another "unrelated" diseased unrepairable tooth, which plaintiff wished to keep, and then denied him the filling he sought on a different tooth that caused him pain for over a year. Harrison, 219 F.3d at 134. The Second Circuit reversed the district court's order granting summary judgment for the defendants on the basis of qualified immunity, holding that prison officials are deliberately indifferent within the meaning of the Eighth Amendment if they (1) refuse treatment for a cavity, a degenerative condition that tends to cause acute infection and pain if left untreated, and (2) impose an unrelated, unreasonable condition on such treatment. Id. at 139. The record presently before this court demonstrates that this case is meaningfully distinguishable. Here, unlike in Harrison, the procedures in question are not distinct and separate; Dr. Caric articulated a reason for linking the extractions and repairs and prioritizing one above the other. He testified that Mr. Roy's retention of so many severely decayed teeth may contribute to the deterioration of his

restorable teeth even after they are filled, and that repairs to those teeth could fail or be futile so long as those sources of bacterial infections remained in Mr. Roy's mouth. Dr. Caric testified that the continuing presence of severely decayed teeth in Mr. Roy's top and bottom jaws can affect what happens to any of the teeth elsewhere in Mr. Roy's mouth. His testimony in that regard is consistent with evidence that Mr. Roy's upper teeth degraded after Mr. Roy stopped assenting to extractions. And the failure of two of the four teeth filled or patched by Dr. Vega within the same time period is also consistent with Dr. Caric's prediction that repairs of filled teeth may be futile so long as so many of Mr. Roy's teeth are severely decayed; healthier teeth may become infected by the bacteria elsewhere in Mr. Roy's mouth.

In this case, there is no credible evidence before the court showing that Dr. Caric's treatment plan for Mr. Roy is the product of any policy or considerations divorced from his professional judgments relating to Mr. Roy's oral health. Rather, the evidence in the record shows that Dr. Caric's treatment plan is consistent with the standard of care, which stages permanent repairs or restoration of restorable teeth after the removal of severely decayed, unrestorable, bacteria ridden, rotting or rotten teeth. Dr. Caric's testimony in that regard is undisputed. Accordingly, Mr. Roy has failed to meet his burden to demonstrate that he is likely to succeed on the merits of his Eighth Amendment medical care claim.

## II. Irreparable Harm

### A. Present Conditions at NCF

Mr. Roy points to the degradation of his teeth over time in arguing that there is a likelihood of irreparable harm unless the court grants the relief he seeks while this case is pending. On December 18, 2024, Mr. Roy had eleven teeth in his upper jaw. Tooth #8 was listed in Mr. Roy's chart as appropriate for extraction at that time. Tooth #8 and six other teeth

in Mr. Roy's upper jaw (Teeth #2, #7, #9-#11, and #16) are charted as severely decayed and unrestorable in Mr. Roy's August 4, 2026 dental record, and Dr. Caric recommends extracting those seven teeth. See Aug. 4, 2026 Dental Record (Doc. No. 59-6, at 8, 26). Mr. Roy challenges the characterization of several of those teeth as unrestorable, but he presented no competent evidence to refute Dr. Caric's testimony and the provider notes in Mr. Roy's dental charts regarding the present status of those teeth. Without medical evidence showing that Dr. Caric's treatment plan prioritizing extractions in such circumstances is substandard, and lacking evidence that repairs undertaken before extractions are performed in conditions like those presented by Mr. Roy's mouth is necessary to prevent the presently restorable teeth from failing before this lawsuit ends, this court cannot conclude that the evidence of Mr. Roy's deteriorating dentition manifests the prospect of irreparable harm requiring the relief Mr. Roy seeks.

If the record showed that the NCF Dental Department is presently understaffed, so that Mr. Roy cannot obtain reasonably prompt appointments consistent with Dr. Caric's treatment plan, this court might reconsider its findings and legal conclusions. But there is no dispute that the NCF Dental Department is open and professionally-staffed five days per week, with Dr. Caric on site at least three of those days. Dr. Caric further testified that a new dentist (Dr. Vega's replacement) will soon be joining Dr. Caric in the near future so that the dental clinic will again meet the DOC's goal of having a dentist on site at NCF five days per week providing care to a prison population of approximately 550 to 600 prisoners. Mr. Roy may obtain timely appointments in such circumstances. Indeed, while this case remains open, the court would expect Defendants' counsel to ensure no undue delay frustrates Mr. Roy's efforts to obtain extractions, restorations, and dentures in accordance with his treatment plan. A court order requiring immediate off-site repairs of Mr. Roy's upper teeth is not presently necessary to avoid

irreparable harm while this case is pending. Accordingly, the district judge should deny Mr. Roy's request for such relief (Doc. No. 32).

### B. Treatment Plan: Extraction and Implants

The consensus opinion of all dentists who have examined Mr. Roy, as stated in the dental records in this court's record and in the record in Roy II, is that the three remaining teeth roots in Mr. Roy's lower jaw (remnants of Teeth #20-#22) are completely unrestorable, severely decayed, and properly extracted. The evidence shows that extraction of those teeth is consistent with the standard of care.

Mr. Roy has offered no competent evidence to show that dental implants are necessary or appropriate for his circumstances once his unrestorable teeth are removed. And even if such evidence were before this court, the relief Mr. Roy seeks would not be warranted. Cf. Ruiz–Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) ("disagreement as to the appropriate course of treatment" is insufficient "to prove a constitutional violation" (internal citations and quotation marks omitted)). Dentures look like natural teeth and serve the same functions. Implants are not necessary to avoid any irreparable harm. Accordingly, the district judge should deny Mr. Roy's request for court-ordered implants.

## Conclusion

For the foregoing reasons, the district judge should deny Plaintiff's motions for preliminary injunctive relief (Doc. Nos. 7, 32). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised by the

objection(s) to this Report and Recommendation "'are subject to review in the district court and those not preserved by such objection are precluded on appeal.'" Id. (citations omitted).

Andrea K. Johnstone
United States Magistrate Judge

September 10, 2026

cc: Steven J. Roy, pro se
Peter Morris MacKenna, Esq.
Shawna P. Bentley, Esq.
Jonathan A. Lax, Esq.